UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| TRAVELERS UNITED, INC.,<br>2833 Alabama Ave SE #30736<br>Washington, D.C. 20020, on behalf of itself<br>and the putative classes<br><br>                       Plaintiff,<br><br>v.<br><br>HILTON WORLDWIDE HOLDINGS INC.,<br>7930 Jones Branch Drive, McLean, Va., 22102, and DOES 1-20<br><br>HILTON DOMESTIC OPERATING COMPANY INC.<br>7930 Jones Branch Drive, McLean, Va., 22102, and DOES 1-20<br><br>                       Defendants. | Case No. _____<br><br>(Superior Court of the District of Columbia No. 2023-CAB-005813) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendants Hilton Worldwide Holdings Inc. and Hilton Domestic Operating Company Inc. ("Hilton") give timely notice of the removal of this matter from the Superior Court of the District of Columbia to this Court.[1] The grounds for removal are as follows:

## INTRODUCTION

1. On September 20, 2023, Plaintiff Travelers United, Inc. ("Travelers") filed a Complaint against Hilton in the Superior Court of the District of Columbia. Travelers served Hilton with the Complaint on November 2, 2023.

---

[1] Defendants' entity names are improperly listed in the Complaint, including the caption, but are referenced in this Notice in their correct forms. Travelers also disregards Defendants' separate corporate forms and instead refers to them collectively as "Hilton" in the Complaint. For convenience of reference in this Notice of Removal, Defendants do the same, but reserve the right to raise arguments based on corporate form in this litigation.

2.  Plaintiff alleges that the manner in which Hilton discloses certain kinds of fees ("hotel fees") at particular Hilton properties constitutes a deceptive trade practice under the D.C. Consumer Protection Procedures Act. *See* Ex. A-1, Compl. ¶ 118 (citing D.C. Code § 28-3904(e)–(f), (j)).  Specifically, Plaintiff alleges that Hilton excludes certain types of hotel fees from the room rate and waits to disclose them "until late in the purchase process."  *Id.* ¶¶ 23–27, 50.  These separated and delayed disclosures allegedly "induc[e] consumers to undertake the search and cognitive effort to pick a hotel room and to psychologically commit to a room based on an inaccurate room rate."  *Id.* ¶ 86. Travelers alleges that such practices cause "tens, if not hundreds, of millions of dollars" in damages to consumers each year by "induc[ing] consumers to pay a higher price than they otherwise would have."  *Id.* ¶¶ 1, 23, 26.

## GROUNDS FOR REMOVAL

3.  A defendant may remove any civil action over which a federal district court has original jurisdiction by filing a notice of removal "containing a short and plain statement of the grounds for removal."  28 U.S.C. § 1441(a).  The "court generally evaluates the defendant's notice of removal like it would a complaint: it asks whether its plausible factual allegations, accepted as true, establish federal jurisdiction."  *Pleznac v. Equity Residential Mgmt., L.L.C.*, No. 17-CV-2732, 2018 WL 10196622, at *2 (D.D.C. May 8, 2018); *accord, e.g.*, *Chem. Toxin Working Grp. v. Johnson & Johnson*, No. 1:22-cv-1259, 2023 WL 2631492, at *2 (Mar. 24, 2023).  The removing party is entitled to rely on allegations in the Complaint to establish jurisdiction.  *See, e.g.*, *id.*, at *5.

4.  As set forth more fully below, this suit qualifies for removal under the

Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. Travelers also has standing under Article III of the U.S. Constitution to support federal jurisdiction.

I.   **This Case Is Removable Under CAFA.**

5.   "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

6.   Hilton denies liability in this suit and plans to present defenses rebutting Travelers's claims on the merits. Hilton also intends to oppose class certification. But for purposes of the jurisdictional requirements for CAFA removal, Hilton notes that the Complaint includes allegations that, if taken as true, establish that Travelers has filed a putative class action suit on behalf of more than 100 proposed class members, a least one of which is a citizen of a different State than Hilton, and that the alleged aggregate amount in controversy exceeds five million dollars.

A.   **Travelers Brings This Case as a Class Action.**

7.   To constitute a "class action" under CAFA, a suit must be "filed under rule 23 of the Federal Rules of Civil Procedure or [a] similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

8.   Travelers brings this representative suit for damages "as a class action pursuant to D.C. Rule of Civil Procedure 23." Ex. A-1, Compl. ¶ 95; *see Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 989 (D.C. 2015) (holding that representative suits for

3

damages under D.C. Code § 28-3905(k)(1) must comply with D.C. Rule 23).

9. The requirements imposed by D.C. Rule 23 are "nearly identical" to the requirements of Federal Rule of Civil Procedure 23. *Clean Label Project Found. v. Abbott Labs., Inc.*, No. 21-CV-3247, 2022 WL 1658813, at *7 (D.D.C. May 25, 2022). Travelers specifically alleges that it has satisfied the requirements of numerosity, commonality, predominance, typicality, adequacy, and superiority. Ex. A-1, Compl. ¶¶ 103–108.

10. Because Travelers has "attempted to comply with the D.C. Superior Court's Rule 23 for class actions" in its complaint seeking class certification, its suit constitutes a class action within the meaning of CAFA. *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 76 (D.D.C. 2014).

B. **The Putative Class Has More Than 100 Members.**

11. To create subject-matter jurisdiction, "the number of members of all proposed plaintiff classes in the aggregate" must be at least 100. 28 U.S.C. § 1332(d)(5)(B). Travelers expressly alleges that "there are tens of thousands or potentially millions of members" in the putative classes. Ex. A-1, Compl. ¶ 103.

12. Travelers seeks certification of two proposed classes. The first, the "National Class," would consist of "[a]ll individuals in the United States who booked a room at a Hilton hotel within the District of Columbia for personal use and paid a resort, destination, and/or other similar fee to Hilton." *Id.* ¶ 96. The second, the "District Class," would consist of "[a]ll residents of the District of Columbia who booked a room at a Hilton hotel within the United States for personal use and paid a resort, destination, and/or other similar fee to Hilton." *Id.* ¶ 97

13. Hilton denies that class treatment is appropriate but agrees that at least 100 individuals paid "a resort, destination, or similar fee" in connection with booking a room for personal use at Hilton properties in the District of Columbia. Hilton operates thousands of hotel rooms in the District of Columbia. For example, the Washington Hilton, which Travelers discusses at length in its Complaint, has 1,107 guest rooms available. Hilton's hotels in the District of Columbia produce tens of thousands of bookings each year. One can reasonably infer that at least 100 of those bookings were made by different individuals who would fall within Plaintiff's purported National Class.

    **C.**    **Minimal Diversity Among the Parties Exists.**

14. This Court has jurisdiction under CAFA if, *inter alia*, minimal diversity exists—here, whether "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1442(d)(2)(A).

15. A corporation is a citizen of its state of incorporation and the state of its principal place of business. *Id.* § 1332(c)(1). Both Defendants are incorporated in the State of Delaware with principal places of business in Virginia. They are thus citizens of Virginia and Delaware.

16. For purposes of federal subject-matter jurisdiction, an individual is a citizen of the State in which that person is domiciled. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). The proposed District Class consists entirely of "residents of the District of Columbia," Ex. A-1, Compl. ¶ 21, and thus necessarily includes citizens of the District of Columbia. The proposed National Class involves putative class members distributed across the United States, including States other than Virginia and Delaware.

5

17. Because at least one putative class member is a citizen of a State other than Virginia or Delaware, CAFA's minimum diversity requirement is satisfied.

**D.    The Amount in Controversy Exceeds $5 Million.**

18. To satisfy CAFA, "the matter in controversy" must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs," based on the aggregated claims of all class members.  28 U.S.C. § 1332(d)(2), (6).  "A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

19. The relief that Travelers requests demonstrates that more than $5 million is at issue.  Travelers seeks in its Complaint the greater of treble damages or $1,500.00 in statutory damages per alleged violation; an injunction prohibiting Hilton from separately charging or listing resort, destination, and similar fees; actual damages; punitive damages; and attorney's fees.  Ex. A-1, Compl. ¶ 123; *see* D.C. Code § 28-3905(k)(2).  Travelers asserts that "[e]ach night that Hilton charged Junk Fees constitutes a violation," that Hilton has engaged in the practices at issue for "years," and that "there are tens of thousands or potentially millions of members of the Classes."  Ex. A-1, Compl. ¶¶ 48, 103, 121.

20. Under Travelers's theory of damages, statutory damages alone satisfy the amount in controversy.  Because the statutory damages provide for $1,500 per violation, all that is necessary for the amount in controversy to be satisfied is for putative class members to have booked Hilton rooms charging an allegedly violative hotel fee for at

least 3,334 nights during the undefined number of "years" Travelers seeks liability.[2] As noted, Hilton operates thousands of hotel rooms in the District of Columbia every night and regularly hosts D.C. residents in its hotels elsewhere. As a matter of "judicial experience and common sense," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), one can infer that putative class members stayed the requisite number of nights to satisfy the amount in controversy.

## II. Travelers Has Standing To Sue.

21. To have standing to sue in federal court, a plaintiff must have suffered "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019).

22. At a minimum, Travelers has both associational and organizational standing to bring suit.[3]

### A. Travelers Has Associational Standing.

23. Travelers has associational standing to bring suit on behalf of its members because at least one of its members has standing, the interests at stake are germane to Travelers's purpose, and individual participation by Travelers's members is not necessary. *See, e.g.*, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

24. Travelers expressly brings "this action on behalf of the interests" of the putative class members. Ex. A-1, Compl. ¶ 107; *see also* D.C. Code § 28-

---

[2] Hilton disagrees that violations should be calculated on a per-night basis. To the extent the distinction is relevant at this early stage, the amount in controversy is still easily met based on treating separate reservations as violations.
[3] Hilton reserves the right to raise additional standing arguments if the matter is disputed.

3905(k)(1)(D)(i) (authorizing suit "on behalf of the interests of a consumer or class of consumers").

25.   Travelers alleges that it is a public interest organization with a nexus to the practices at issue.  Ex. A-1, Compl. ¶¶ 12–15.  It advocates against the practices at issue in this suit as part of its broader mission. *See id.*

26.   Travelers seeks damages solely through a putative class action, *id*. ¶¶ 95, 120, which does not require its members "to participate as a named plaintiff in the lawsuit," *Ctr. for Bio. Diversity v. EPA*, 861 F.3d 174, 182 (D.C. Cir. 2017).

27.   On information and belief, at least one of Travelers's members is a putative class member who, based on the pleadings in Travelers's Complaint, has standing to sue. Information about Travelers's membership is "peculiarly within the possession and control of" Travelers.  *Hedgeye Risk Mgmt., L.L.C. v. Heldmann*, 271 F. Supp. 3d 181, 189 (D.D.C. 2017); *see Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 (D.C. Cir. 1994).  Nevertheless, Travelers reported in 2015 that it had 23,000 members.  *See* Ex. B-1.  By 2020, it had reportedly grown to almost 50,000 members.  *See* Ex. B-5.

28.   The exact overlap between Travelers's substantial membership and the number of members of the putative classes will be determined from information in the possession and control of Travelers.  But at the pleading stage, it is certainly reasonable to infer that at least one of those 50,000 members, who themselves are presumably more likely to travel than the average citizen, is one of the "tens of thousands or potentially millions" of people that paid one of the fees at issue when booking a Hilton hotel room in

the District of Columbia or (for D.C. residents) elsewhere in the United States.  Ex. A-1, Compl. ¶ 103.

29.     Taking the allegations in the Complaint as true, Travelers has alleged that individuals who are both organization members and members of a putative class suffered concrete and particularized injuries.  Travelers alleges that "consumers choose a product or service based on the advertised 'base price'" and thus "are significantly more likely" to be induced to pay a higher rate for a hotel room when fees are disclosed later in the process.  *Id*. ¶¶ 31–32.  It thus alleges that Hilton's methods of disclosing fees "generate[s] significant burden for individual consumers," leading them to pay "upward of twenty percent more."  *Id*. ¶ 42.  All told, Travelers alleges that Hilton's fee disclosure methods "generate tens, if not hundreds, of millions of dollars … each year."  *Id*. ¶ 5.  It is certainly plausible to infer from these allegations that a member of Travelers's organization paid more for a hotel room because of Hilton's methods for disclosing fees.  Again, assuming the truth of such, that higher cost would constitute injury in fact that is traceable to Hilton and redressable through the requested relief.

      **B.**     **Travelers Has Organizational Standing.**

30.     Travelers has organizational standing to bring suit on its own behalf.  If "an organization expends resources in response to, and to counteract, the effects of the defendants' alleged unlawful conduct rather than in anticipation of litigation, it has suffered a concrete and demonstrable injury that suffices for purposes of standing." *PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1097 (D.C. Cir. 2015) (internal quotation marks and citations omitted).

31. On information and belief, Travelers has diverted resources to counteract the effects of resort fees through consumer education efforts. The extent of Travelers's expenditures on consumer education regarding hotel fees will be determined from information in its possession and control. But at the pleading stage, it is plausible to infer that Travelers has diverted at least some resources to create content educating consumers about hotel fees. According to its 2019 tax report (the most recent such report available to Hilton without discovery), Travelers listed "education of travelers and regulators" as its "mission," explaining that its "staff gathers facts, analyzes issues, and disseminates that information to the public, the travel industry, regulators and policy makers." Ex. B-2. Travelers reported $94,488 in expenses for program services that included "newsletters" and a "[s]eries of instructional videos for consumer protections." *Id.*

32. Travelers's education efforts include warning consumers and industry members about, and advocating responses to, resort fees. It reports that its "staff regularly meets with travel industry leaders … to educate and advocate on issues regarding … disclosure of fees." Ex. B-3. Travelers's employees frequently appear in news articles to create awareness of the existence of these fees and to inform consumers how to avoid them, and Travelers has created and hosted content warning consumers about these fees on its own website. *See*, *e.g.*, B-4.

**ALL PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED**

33. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(2) because it is filed within thirty (30) days of service of the Complaint on Hilton on November 2, 2023. *See* Ex. A-3.

34. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all process, pleadings, and orders served upon Hilton are attached. *See* Ex. A-1–A-8.

35. Hilton has not filed any substantive pleadings in the Superior Court. Hilton and the plaintiffs agreed to an extension on the deadline for Hilton's responsive pleading to January 11, 2024, as reflected in the Consent Motion to Extend Time filed with the Superior Court. Ex. A-8. Hilton secured the extension so that it would have additional time to assess the Complaint and grounds for removal.

36. The United States District Court for the District of Columbia is the federal judicial district in which the District of Columbia Superior Court sits. *See* 28 U.S.C. § 88. Because this action was originally filed in the District of Columbia Superior Court, it is properly removed to this District Court. *See id.* § 1441(a).

37. Written notice of the filing of this Notice of Removal shall be promptly served on Travelers and a copy of this Notice shall promptly be filed with the Clerk of the Superior Court of the District of Columbia pursuant to 28 U.S.C. § 1446(d).

38. Both Defendants join in and consent to the removal of this action. *See id.* §§ 1446(b)(2), 1453.

## **CONCLUSION**

39. Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Hilton's right to assert any defense or affirmative matter, including but not limited to those under Rule 12(b) of the Federal rules of Civil Procedure.

40. Hilton reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, Hilton gives notice that this matter is removed to the United States District Court for the District of Columbia, and requests that this court retain jurisdiction for further proceedings.

Respectfully submitted,

*s/*     Bridget K. O'Connor
Bridget K. O'Connor (D.C. Bar #491211)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone 202.879.3939
boconnor@jonesday.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing the CM/ECF participants below:

Hassan Zavareei
Peter Silva
Leora Friedman
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Ave NW, Suite 1010
Washington, DC 20006
Tel: (202) 973-0900
hzavareei@tzlegal.com
psilva@tzlegal.com
lfriedman@tzlegal.com
*Counsel for Plaintiff*

/s/ Bridget K. O'Connor