# Exhibit A-1

eFiled
09/20/2023 4:19:34 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| TRAVELERS UNITED, INC.<br>2833 Alabama Ave SE #30736<br>Washington, D.C. 20020, on behalf of itself<br>and the putative classes,<br><br>     Plaintiff,<br><br>     v.<br><br>HILTON WORLDWIDE HOLDINGS<br>INC.<br>7930 Jones Branch Drive, Mclean, V.A.,<br>22102, and DOES 1-20<br><br>HILTON DOMESTIC OPERATING<br>COMPANY INC.<br>7930 Jones Branch Drive, McLean, V.A.,<br>22102, and DOES 1-20<br><br>SERVE:<br>Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808<br><br>     Defendants. | Case No:    2023-CAB-005813<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      For years, Hilton Worldwide Holdings Inc. and Hilton Domestic Operating Company Inc. (together "Hilton")[1] have been systemically cheating consumers out of tens of millions of dollars each year by falsely advertising its hotel room rates.

2.      Rather than disclosing the full cost of its hotel rooms upfront, Hilton instead adds on last-minute "destination fees," "resort fees," and other similar charges that are really part of the nighty room rate.

---

[1] The term "Hilton" refers to the Defendants Hilton Worldwide Holdings Inc. and Hilton Domestic Operating Company Inc. and the hotels that they own or franchise, inclusive of all brands.

ALM | LAW.COM RADAR

3.      The goal of Hilton's false advertising is to convince consumers shopping for a hotel room that a Hilton room is cheaper than it is.

4.      These fees—commonly called "Junk Fees," including by the Federal Trade Commission ("FTC")[2]—have recently been the subject of national media attention, including during President Biden's 2023 State of the Union Address.

5.      As President Biden explained, "too many companies" are charging "hidden surcharges . . . to make you pay more. . . . [J]unk fees may not matter to the very wealthy, but they matter to most other folks in homes like the one I grew up in, like many of you did. They add up to hundreds of dollars a month. They make it harder for you to pay your bills[.]"[3]

6.      Indeed, in 2017 alone, the Junk Fee revenue of the U.S hotel industry was approximately $2.7 billion.[4]

7.      Junk Fee practices—like Hilton's—are not just deceptive. They are illegal.

8.      Junk Fees violate the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28–3901, *et seq.*, ("CPPA"), which *requires* businesses to sell goods and services for their advertised prices.

9.      Travelers United brings this action under the CPPA to stop Hilton from falsely advertising hotel room rates in the District of Columbia (the "District") and to residents of the

---

[2] As defined by the FTC, "Junk Fees" are "unfair or deceptive fees that are charged for goods or services that have little or no added value to the consumer" or fees that are "hidden," such as those disclosed only at a later stage in the consumer's purchasing process or not at all." *Unfair or Deceptive Fees Trade Regulation Rule Commission Matter No. R207011*, 87 Fed. Reg. 67413 (proposed Nov. 8, 2022) (to be codified at 16 C.F.R. pt. 464), *available at* https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011 (cleaned up).

[3] *President Biden's State of the Union Address*, White House, https://www.whitehouse.gov/state-of-the-union-2023/ (last visited September 19, 2023).

[4] Shelle Santana, Steven K. Dallas, & Vicki G. Morwitz, *Consumer Reactions to Drip Pricing*, Mkting. Science (forthcoming), at 4, *available at* https://www0.gsb.columbia.edu/mygsb/faculty/research/pubfiles/26100/Santana%20Dallas%20Morwitz%20Marketing%20Science%20forthcoming.pdf.

ALM | LAW.COM RADAR

District and force Hilton to pay back the tens of millions of dollars in unlawful Junk Fee revenues it has taken from consumers together with statutory penalties and punitive damages.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this case pursuant to D.C. Code § 11-921 and D.C. Code § 28–3905(k)(2).

11. This Court has personal jurisdiction over the Defendant pursuant to D.C. Code § 13- 423(a).

## PARTIES

A. **Travelers United**

12. Plaintiff Travelers United, Inc. is a nonprofit public interest organization. Travelers United is a Delaware tax exempt corporation that is registered as a foreign corporation in the District of Columbia. Travelers United is based in Washington, D.C. and Virginia.

13. The mission of Travelers United is to improve and enhance travel for consumers. Travelers United has been instrumental in advocating against hidden hotel fees both federally and locally in the District.

14. Travelers United has met with many members of the D.C. Council and their staff regarding the issue of the hotel Junk Fees. Nationally, Travelers United has worked and met with members of Congress, the National Association of Attorneys General, other national consumer advocacy groups, and the Federal Trade Commission educating, alerting, and advocating against hidden hotel Junk Fees.

15. Travelers United has standing to bring its claims under D.C. Code § 28–3905(k)(1)(D)(i) because it qualifies as a public interest organization with a sufficient nexus to the consumer interests at issue in the litigation.

B. **Hilton**

16. Defendant Hilton Worldwide Holdings Inc. is a publicly traded holding company that appears to be the ultimate parent company of most Hilton-related entities and which is the primary entity appearing on Hilton's terms of service. Defendant Hilton Worldwide Holdings Inc.

owns, manages, and franchises a broad portfolio of hotels and lodging facilities throughout the United States and abroad, including in the District of Columbia. It is incorporated in Delaware and headquartered in McLean, Virginia. Hilton Worldwide Holdings Inc. operates dozens of properties in the District.

17.    Defendant Hilton Domestic Operating Company Inc. appears to be Hilton's primary operating entity in the United States. It is incorporated in Delaware and headquartered in McLean, Virginia. Hilton Domestic Operating Company Inc. operates dozens of properties in the District.

18.    Hotel brands operated by Defendants Hilton Worldwide Holdings Inc. and Hilton Domestic Operating Company Inc. (collectively, "Hilton") include, but are not limited to, Waldorf Astoria, LXR, Conrad, Canopy, Signia by Hilton, DoubleTree, Embassy Suites, Hilton Garden Inn, and Hampton by Hilton.[5]

19.    Does 1-20 are persons and/or entities who work in conjunction with Hilton to engage in the unlawful conduct described in this Complaint, whose identities are presently unknown to Plaintiff. Plaintiff expressly reserves its right to amend this Complaint once those identities become known to it.

20.    Hilton has, at all relevant times, engaged in trade or commerce in the District by advertising, offering, and providing hotel lodging to customers nationwide in its hotels in the District and to District residents in hotels outside of the District.

## FACTUAL BACKGROUND

### A.    Companies Use Junk Fees to Trick Consumers.

21.    Large, sophisticated companies—like Hilton—with large, sophisticated marketing departments know that Junk Fees trick consumers into paying more for a good or service than they otherwise would.

---

[5] *See Hilton*, https://www.hilton.com/en/corporate/ (last visited September 19, 2023).

ALM | LAW.COM RADAR

22.     Indeed, in 2017 alone, the Junk Fee revenue of the U.S hotel industry was approximately $2.7 billion.[6]

23.     Two common types of Junk Fees practices are "drip pricing" and "partitioned pricing," both of which are used by Hilton to illicitly generate tens, if not hundreds, of millions of dollars in extra (and unearned) profits each year.

24.     **Drip Pricing:** Drip pricing occurs when a company does not disclose the total price of a product or service until late in the purchase process, after consumers have already expended time and effort selecting the product or service and have already committed to a particular purchase.

25.     Consumers who are not provided the complete price until checkout are likely to proceed with their purchase even if continuing to search for a cheaper price would be more "optimal" for them because consumers want to avoid "the cost of the time and cognitive effort involved" in continuing to search for a product or service.[7]

26.     Once a consumer decides what to buy, he is unlikely to depart from that decision because of the "additional cognitive effort" involved in resuming his search.[8] In other words, omitting Junk Fees from the advertised cost of a product or service through drip pricing induces consumers to pay a higher total price than they otherwise would have.

27.     **Partitioned Pricing:** Partitioned pricing occurs where a portion of the costs for a good or service is excluded from the total price. When Junk Fees are initially "partitioned" from total price, consumers are unable to make effective price comparisons between goods and service

---

[6] Santana et al., *Consumer Reactions to Drip Pricing*, *supra* note 4, at 4.

[7] Mary W. Sullivan, *Economic Issues: Economic Analysis of Hotel Resort Fees*, Bureau of Economics Fed. Trade Comm'n (Jan. 2017), at 16-17, https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resort-fees/p115503_hotel_resort_fees_economic_issues_paper.pdf.

[8] *Id.* at 17.

leading to distortions in the market. In other words, partitioning Junk Fees make consumers less likely to be able to effectively select "the most valuable option"[9] when making a purchase.

28.    Making matters worse, consumers exposed to advertising that partitions Junk Fees from total price are also more likely to underestimate the total price of a given product or service even when the Junk Fees and base price are presented simultaneously,[10] meaning they are further impeded from comparing their options. Consumers are even more likely to underestimate the total price when the font size of the Junk Fee is smaller than that of the base price.[11]

29.    A reason consumers underestimate total price when presented with partitioned pricing is that they will often entirely disregard the Junk Fee because of the cognitive costs and effort involved in adding the partitioned prices. Also, when presented with the task of performing quick mental computation, consumers use the heuristic referred to as "anchoring and adjustment" in which they "overweight the anchor information (e.g., the base price) and adjust insufficiently for the rest of the information (e.g., the [Junk Fee])."[12]

30.    These drip pricing and partitioned Junk Fee practices are not innocuous. When a Junk Fee is hidden and/or partitioned, consumers cannot reasonably compare the cost of a product or service across available options within a company or across companies.

---

[9] *Id.* at 23; David Adam Friedman, *Regulating Drip Pricing*, 31 Stan. L. & Pol'y Rev. 51, 68 (2020) (Lan Xia and Kent Monroe experiments showed that "price separation may enhance consumers' . . . perceived value . . . and reduce further information search intentions" due to "insufficient price adjustment" (quoting Lan Xia & Kent Monroe, *Price Partitioning on the Internet*, 18 J. Interactive Mktg. 63 (2004)) (cleaned up)).

[10] Sullivan, *Economic Issues: Economic Analysis of Hotel Resort Fees*, *supra* note 7, at 21-22.

[11] *Id*. at 25.

[12] *Id.,* at 23-24 (in an experiment where "[t]wo groups of high-school students were asked to estimate a numerical expression in five seconds," and "[o]ne group was given the expression 8x7x6x5x4x3x2x1, while the other group was given the same expression in reverse order: 1x2x3x4x5x6x7x8," "[b]oth groups underestimated the total (40,320), but the median estimate given for the descending sequence (2,250) was higher than that of the ascending sequence (512)" (citing Tversky, Amos and Daniel Kahneman (1974), *Judgment Under Uncertainty: Heuristics and Biases*, Science, 185 (September), 1124-31)).

ALM | LAW.COM RADAR

31.     Indeed, as the companies that engage in Junk Fee practices are well aware, consumers choose a product or service based on the advertised "base price," and not based on the drip price or partitioned price, especially when the Junk Fee is not adequately disclosed.[13]

32.     Accordingly, "buyers may be hurt" because "[w]hen there is uncertainty over possible drip sizes . . . consumers more frequently fail to identify the cheapest offer." Rasch et al. *Drip pricing and its regulation: Experimental evidence*, *supra* note 13; *see, e.g.*, Santana et al., *Consumer Reactions to Drip Pricing*, *supra* note 4, at 6 (studies showed that "consumers exposed to drip pricing . . . are significantly more likely to 1) initially select the option with the lower base price, 2) make a financial mistake by ultimately selecting the option that has a higher total price than the alternative option, given the add-ons chosen, and 3) be relatively dissatisfied with their choice").

33.     As the FTC's Bureau of Economics has explained, the use of resort fees adds steps to the process of determining the actual price of a hotel room, which forces consumers to pay more than they would if presented with full, complete prices:

> With the separate disclosure of resort fees, searching for hotel accommodations on hotel websites requires more steps than if resort fees were included in the room rate. If resort fees were included in the room rate, consumers could compare rooms at different hotels by simply viewing the room pages at the hotel websites and remembering the prices. With separately-disclosed resort fees, consumers would need to add the room rate to the resort fee and

---

[13] Alexander Rasch et al. *Drip pricing and its regulation: Experimental evidence*, 176 J. Econ. Behavior & Org. 353 (2020), *available at* https://www.sciencedirect.com/science/article/abs/pii/S0167268120301189 ("buyers . . . . based their purchase decision exclusively on the base price"); *see also* Jane L. Levere, *Paying a 'Resort Fee' When You're Not at a Resort*, N.Y. Times (Oct. 22, 2018), https://www.nytimes.com/2018/10/22/business/luxury-hotels-urban-areas-cities.html (according to Robert Mandelbaum, director of research information services for CBRE Hotels' Americas Research, "Resort fees are a very profitable way for hotels to raise revenue and not advertise they're raising room rates. By a strict definition, they're not raising room rates but adding a mandatory fee").

ALM | LAW.COM RADAR

> remember the total for each hotel under consideration or keep track of the room rates and resort fees separately for each hotel. Alternatively, the consumer could click through to the booking page for each hotel to view the total charges for the trip and remember the total.[14]

34.    As a result, consumers are forced either to "incur higher total search and cognitive costs or to make an incomplete, less informed decision that may result in a more costly room, or both."[15]

35.    The FTC has thus characterized Junk Fees as especially egregious when they are hidden (*i.e.*, "disclosed only at a later stage in the consumer's purchasing process or not at all"), because openly disclosed Junk Fees would enable consumers to determine that the cost of a given product or service is not favorable relative to the cost charged by competitors and choose to do business elsewhere. *See, e.g.*, *Unfair or Deceptive Fees Trade Regulation Rule Commission Matter No. R207011*, *supra* note 2 ("After a market leader took unilateral action to phase out hidden fees, the platform 'lost significant market share and abandoned the policy after a year because consumers perceived the platform's advertised prices to be higher than its competitors' displayed prices.'" (citation omitted)).

36.    Moreover, drip and/or partitioned pricing runs afoul of the FTC Act itself. *See* 15 U.S.C. § 45(a)(1) (declaring unlawful "unfair or deceptive acts or practices in or affecting commerce"). The FTC's guidance on bait and switch advertising states that "[n]o statement . . . should be used in any advertisement which creates a false impression of the . . . value . . . of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, the purchaser may be switched from the advertised product to another." 16 C.F.R. § 238.2(a). If the first contact is secured by the deceptive bait advertisement, it is a

---

[14] Sullivan, *Economic Issues: Economic Analysis of Hotel Resort Fees*, *supra* note 7, at 2-3.

[15] *Id.* at 4; *see also* Friedman, *Regulating Drip Pricing*, *supra* note 9, at 67 (". . . sellers provide buyers with the 'initial value' in the form of the initially-presented base price. . . . Buyers are influenced by the initial value, so a lower base price would create the impression of a lower overall price." (citing Gorkan Ahmetoglu et al., *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behaviour*, 21 J. Retailing & Cons. Services 696, 697 (2014))).

violation of law even if the true facts are subsequently made known to the buyer. 16 C.F.R. § 238.2(b). Through drip and/or partitioned pricing, companies induce consumers to choose a product or service based on an advertised price (*i.e.*, the "bait"), despite ultimately charging a different and higher price than advertised (the "switch").

37.     Given this, it is no surprise companies are motivated to hide Junk Fees through drip and/or partitioned pricing for as long as possible in the search and purchase process, as duping consumers into paying Junk Fees brings in substantial revenue. In 2017 alone, the Junk Fee revenue of the U.S. airline and U.S hotel industries was approximately $57 billion and $2.7 billion, respectively.[16]

38.     In many instances, companies even compound the benefit they obtain through these practices by increasing Junk Fees at a higher rate than they increase the base price of the underlying product or service itself.[17] As a result, the product or service appears cheaper to consumers than competitor products or services, even though the total cost of the product or service, inclusive of Junk Fees, is equally if not more expensive than those other companies' products or services.[18]

39.     Companies are also able to increase hidden Junk Fees without suffering meaningful market consequences.[19] In particular, companies are free to charge excessive Junk Fees in part because drip pricing impedes fair, honest, and free market competition as they are not adequately disclosed alongside the base price.[20]

40.     Hence, through drip and/or partitioned pricing, companies can charge excessive Junk Fees while skirting economic consequences, as shrouding the fee avoids deterring consumers from purchasing a given product or service based on a Junk Fee and its effect on the total price.

---

[16] Santana et al., *Consumer Reactions to Drip Pricing*, *supra* note 4, at 4.

[17] *Unfair or Deceptive Fees Trade Regulation Rule Commission Matter No. R207011*, *supra* note 2.

[18] *See id.*

[19] Rasch et al. *Drip pricing and its regulation: Experimental evidence*, *supra* note 13.

[20] *Id.* ("firms fiercely compete in base prices but not in drip prices," so "total price increases when firms use drip pricing").

41.     Meanwhile, competitor companies and consumers face the consequences. Companies that engage in drip and/or partitioned pricing will lure consumers away from properly behaving competitors that do not engage in such practices (and thus appear to charge higher prices) and will earn more profit than those competitors.[21] Junk Fee hotels, *i.e.*, hotels engaging in drip and/or partitioned Junk Fee practices, gain further advantage because they only pay commission to online travel agents on the base price rather than the total price even though the Junk Fees are mandatory.[22]

42.     Junk Fees charged through drip and/or partitioned pricing also generate significant burden for individual consumers. *See Unfair or Deceptive Fees Trade Regulation Rule Commission Matter No. R207011*, *supra* note 2 (explaining that "[c]onsumers faced with such fees pay upward of twenty percent more than when the actual price was disclosed upfront," and, as a result, such fees "impose substantial economic harms on consumers").

**B.     The FTC and State Attorneys General Are Turning Off the Faucet on Hotel Drip Pricing.**

43.     In November 2012, the FTC warned the hotel industry that drip pricing as it pertains to charging resort fees may violate federal consumer protection law by "misrepresenting the price consumers can expect to pay for their hotel rooms."[23] The FTC specifically warned the hotels that the largest and most prominent price for a hotel room should include the resort fee, and should be provided to the consumer upfront and not later in the checkout process, to avoid constituting hotel

---

[21] *Id.* (". . . where there is uncertainty about the drip size, sellers with a high drip-price limit can earn profits above the competitive level.").

[22] *See* Sullivan, *Economic Issues: Economic Analysis of Hotel Resort Fees*, *supra* note 7, at 3.

[23] Warning Letter from Mary K. Engle, Assoc. Dir. for Advert. Pracs., Fed. Trade Comm'n (Nov. 2012), *available at* https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-warns-hotel-operators-price-quotes-exclude-resort-fees-other-mandatory-surcharges-may-be/121128hoteloperatorsletter.pdf; *see also FTC Warns Hotel Operators that Price Quotes that Exclude 'Resort Fees' and Other Mandatory Surcharges May Be Deceptive*, Fed. Trade Comm'n (Nov. 28, 2012), https://www.ftc.gov/news-events/news/press-releases/2012/11/ftc-warns-hotel-operators-price-quotes-exclude-resort-fees-other-mandatory-surcharges-may-be.

Junk Fee drip pricing.[24] These fees are required to be revealed in the advertised room rate, not later in the checkout process or even later when the consumer checks into the hotel.[25]

44.      The FTC's Bureau of Economics then issued a report in 2017 confirming its concerns about this practice of drip pricing. That report concluded that "consumers are likely being harmed by the hotel industry practice of disclosing mandatory resort fees separate from posted room rates, without first disclosing the total price."[26]

45.      In sum, separating resort and other Junk Fees that consumers are obligated to pay in order to book a hotel room from advertised room rates without first disclosing the total price harms consumers by artificially increasing the search costs and the cognitive costs of finding and booking hotel accommodations. Unless the total price is disclosed upfront, consumers are not reasonably able to make an informed decision as to which product or service would be most favorable for them to purchase.

46.      Seeking to protect consumers from this harm, numerous Attorneys General have brought enforcement actions to put an end to Junk Fee practices in the hotel industry. For example, in 2019, the Attorney General for the District of Columbia filed a lawsuit against Marriott International, Inc. ("Marriott") under the CPPA "for hiding the true price of hotel rooms from consumers and charging hidden resort fees to increase profits."[27] Other Attorneys General have

---

[24] Warning Letter from Mary K. Engle, *supra* note 23.

[25] *Id.*

[26] *FTC Economic Issue Paper Examines the Impact of Disclosing Mandatory Hotel Resort Fees Separately From Room Rates*, Fed. Trade Comm'n (Jan. 5, 2017), https://www.ftc.gov/news-events/news/press-releases/2017/01/ftc-economic-issue-paper-examines-impact-disclosing-mandatory-hotel-resort-fees-separately-room.

[27] *AG Racine Sues Marriott for Charging Deceptive Resort Fees and Misleading Tens of Thousands of District Consumers*, Office of the Att'y Gen. of D.C. (July 9, 2019), https://oag.dc.gov/release/ag-racine-sues-marriott-charging-deceptive-resort; Compl. for Violations of the Consumer Prot. Procedures Act, *District of Columbia v. Marriott Int'l, Inc.* (D.C. Super. Ct.), at 3 ¶¶ 4-5, *available at* https://oag.dc.gov/sites/default/files/2019-07/Marriott-Complaint.pdf (alleging "price deception" robs "consumers of the ability to readily ascertain and compare the actual price of a room at a Marriott hotel to the price of the hotel rooms offered by Marriott's competitors and at other Marriott hotels").

ALM | LAW.COM RADAR

brought similar actions against hotel corporations for inducing consumers to effectuate purchases that are not cost effective, while the companies gain millions.[28]

47.     Despite the 2012 warning letter from the FTC, Attorney General enforcement actions, and, most importantly, the substantiated harms to consumers, Hilton continues to advertise room prices that do not include its resort and other Junk Fees.

## C.    Hilton's Deceptive Junk Fee Advertising

48.     This action was commenced after years of Hilton deceiving customers about the rates of its hotel rooms.

49.     Hilton does not include Junk Fees in its advertised hotel room prices. By doing so, Hilton misrepresents and conceals the actual cost of its rooms, deceiving consumers and tricking them out of their hard-earned money.

50.     When a consumer searches for a hotel on Hilton's website, Hilton's practice is to initially advertise a room rate that excludes Junk Fees, but then to add Junk Fees into the final charges a consumer is required to pay.

51.     Hilton charges these additional Junk Fees, which can exceed $35 per day at Hilton properties, to increase its revenues without appearing to raise the room rate at its hotels.

---

[28] *See, e.g.*, Amended Complaint for Injunctive and Other Relief, https://ago.nebraska.gov/sites/ago.nebraska.gov/files/doc/2019.07.24_Hilton%20Dopco%20Inc._Amended%20Complaint.pdf (Nebraska suit against Hilton for "drip pricing" whereby consumers are "misled or confused concerning the true cost of an overnight stay"); *AG Shapiro's Action Requires Marriot to Disclose "Resort Fees,"* Pa. Att'y Gen. Michelle A. Henry (Nov. 17, 2021), https://www.attorneygeneral.gov/taking-action/ag-shapiros-action-requires-marriott-to-disclose-resort-fees/ (Pennsylvania settlement with Marriott, whereby Marriott agreed "to prominently disclose the total price of a hotel stay . . . on the first page of its booking website as part of the total room rate"); *Office of the Attorney General Sues Travel Reservation Site for Deceptive Trade Practices Regarding the True Price of Hotel Rooms*, Ken Paxton Att'y Gen. of Tex. (Aug. 10, 2023), https://www.texasattorneygeneral.gov/news/releases/office-attorney-general-sues-travel-reservation-site-deceptive-trade-practices-regarding-true-price (Texas suit against travel reservation company for "omitting mandatory fees from the advertised room rate").

ALM | LAW.COM RADAR

1.    **Junk Fees at the Washington Hilton**

52.    For example, when consumers search for a hotel room in the District, the consumer receives a variety of potential hotel options from within the Hilton family of brands with purported lowest per night pricing information, including the Washington Hilton:



53.    The initial advertisement does not provide any indication as to whether a particular hotel is a "Junk Fee hotel," *i.e.*, a hotel engaging in drip and/or partitioned Junk Fee practices.

54.    Some hotels do not charge Junk Fees, and thus, for those hotels, the advertised per night price is correct.

55.    However, for Junk Fee hotels, the advertised price is not correct. When a consumer navigates to book a room at a Junk Fee hotel, the transaction cannot be completed for the advertised price.

56.    For example, as shown, the advertised lowest nightly price for the Washington Hilton is $595 per night.

57.    If a consumer clicks "Hotel Details," she is again presented with the $595 price, description of the property, and list of amenities and features, but there is no mention of a Junk Fee:



/ / /

/ / /

/ / /

ALM | LAW.COM RADAR

58.     As the consumer proceeds through the booking process, she is still not presented with an accurate and complete room price that includes Junk Fees. Specifically, when she selects the Washington Hilton she is taken to the next page where she is presented with several different room types and their corresponding prices from which to choose. Here, Hilton continues to advertise that a 1 King Bed Deluxe Guest Room can be booked from $595 when in fact the room cannot be purchased for that price:[29]



/ / /

/ / /

/ / /

---

[29] The destination charge referenced on this page is not only separate and apart from the advertised room price, but it is not conspicuous to consumers seeking to determine the price of the room (as it is printed in small font and is not text a consumer must click to proceed with the booking process). Further, calling the fee "mandatory" falsely represents it as an amount Hilton is required to charge by law or otherwise, when in reality Hilton chooses to charge it for its own gain.

59.     When the consumer selects "Book From $595," she is taken to the "Select a Rate" page where she is presented with a number of different rates depending on whether the consumer is a Hiltons Honors member, the desired cancelation period, and actual voluntary add-ons which increase the price of the room. Importantly, on this page Hilton continues to advertise an incomplete room price, as it still displays its lowest Semi-Flex Honors Discount rate of $595 partitioned from the (inconspicuous) $20.00 "mandatory charge" per night:

| Flexible Rate<br>Change or cancel up to 1 day before arrival. Room only.<br><br>**Plus $20.00 USD** mandatory charge per night, plus tax | **$620** ⓘ<br>[ Book ] | Honors Discount<br>~~$620~~<br>**$607** ⓘ<br>[ Book ] |
| --- | --- | --- |
| Breakfast Included<br>Change or cancel up to 1 day before arrival. Breakfast included for each registered adult and child age 5 and under who share the same room. Breakfast offerings may vary by hotel.<br><br>**Plus $20.00 USD** mandatory charge per night, plus tax | **$640** ⓘ<br>[ Book ] | Honors Discount<br>~~$640~~<br>**$627** ⓘ<br>[ Book ] |
| Semi-Flex<br>Change or cancel up to 5 days before arrival. Room only.<br><br>**Plus $20.00 USD** mandatory charge per night, plus tax | **$607** ⓘ<br>[ Book ] | Honors Discount<br>~~$607~~<br>**$595** ⓘ<br>[ Book ] |

/ / /

/ / /

/ / /

60.     When the consumer selects "Book" for the Semi-Flex room, she is taken to the "Payment and Guest Details" page, where even here she is not presented with a complete room price inclusive of the base room price plus any additional Junk Fees. Specifically, she only sees a "Total for the Stay" of $713.61, consisting of an incomplete room charge of $595.45, partitioned Junk Fees of $20.00, and taxes of $98.16:

Step 3 of 3

## Payment and Guest Details

| Total for stay | $713.61 |
|---|---|
| Show price details | |
| Total room charge | $595.45 |
| Total fees | $20.00 |
| Total taxes | $98.16 |

ⓘ  **This is a members-only rate. Join Hilton Honors (for free!) on this page,** sign in, **or** choose a different rate.

/ / /

/ / /

/ / /

ALM | LAW.COM RADAR

61.    If the consumer selects "Show price details," she is again presented with a room price that excludes, and is partitioned from, the Junk Fees that Hilton requires her to pay to complete the purchase:

Step 3 of 3

# Payment and Guest Details

| Total for stay | $713.61 |
|---|---|
| Hide price details | |
| | Price in $USD |
| 1 King Bed Deluxe Guest Room Honors Discount Semi-Flex 22 Sep 2023 | $595.45 |
| **Total room charge** | **$595.45** |
| Mandatory Charge: $20.00 per room, per night | |
| **Total fees** | **$20.00** |
| 15.95 % per room, per night | |
| **Total taxes** | **$98.16** |
| | Total for stay: **$713.61** |

62.    Hilton thus never discloses a complete and accurate room price to the consumer inclusive of Junk Fees. And though Hilton has finally provided a "Total for stay" on this page, it is the last page of the booking process, at which time a consumer has already invested time and effort into selecting and booking a room, and has already psychologically committed to the room.

63.    And even at this stage of the booking process, Hilton continues to create a false impression that the "fees" it charges are mandatory. Not only does Hilton continue to describe the Junk Fee as a "Mandatory Charge" on this page, which itself suggests that Hilton is obligated by the government or otherwise to charge the fee as opposed to deciding to charge the fee of its own accord, but Hilton tells consumers that this so-called mandatory charge must be assessed "per room, per night," just as it must assess the D.C. transient accommodations tax "per room, per

night." This language creates the deceptive impression that the $20.00 charge is not a Junk Fee that Hilton voluntarily charges for its own benefit, but a fee that it is obligated to charge.[30]

64.    Hilton's Junk Fee practices are further misleading because elsewhere it does not treat fees for similar services as separate from the room charge. In particular, the Washington Hilton offers a special "Breakfast Included" rate that it advertises to consumers on the "Select a Rate" page. With this option, Hilton will give consumers breakfast "for each registered adult and child age 5 and under who share the same room," and Hilton includes the additional charge associated with that benefit in the advertised room rate:



**Breakfast Included**

Change or cancel up to 1 day before arrival. Breakfast included for each registered adult and child age 5 and under who share the same room. Breakfast offerings may vary by hotel.

**Plus $20.00 USD** mandatory charge per night, plus tax

$245    ⓘ

**Honors Discount**
$245

$240    ⓘ

Book

Book

65.    However, even though Hilton describes the Junk Fee as a fee that includes a credit for food and beverage (namely, "Premium guest internet access []; daily $20 food and beverage credit; Lyft bicycle ride, up to 3 hours daily"), unlike its incorporation of the additional charge for breakfast in its advertised price for the "Breakfast Included" room, it advertises a room price exclusive of the Junk Fee.

66.    Moreover, Hilton itself treats Junk Fees as part of the room price for purpose of taxation. Specifically, Hilton charges D.C.'s transient accommodations tax rate of 15.95% on the entire charge (Junk Fee included), but assesses a lower sales tax on other purchases. Even though Hilton thereby treats the base room price and Junk Fee as an aggregate room charge for purpose

---

[30] Consumers who access the Washington Hilton booking process through Google are similarly misled. Such consumers first see the Washington Hilton homepage at https://www.hilton.com/en/hotels/dcawhhh-washington-hilton/, followed by the "Select a Room" page on which Hilton advertises an inaccurate room price (*supra* ¶ 58), followed by the "Select a Rate" page that continues to display an incomplete room price (*supra* ¶ 59) and, finally, a payment page where Hilton still does not disclose an accurate "room charge" that incorporates Junk Fees (*supra* ¶¶ 60-62).

ALM | LAW.COM RADAR

of taxation, it nonetheless deceptively excludes Junk Fees from the room price when advertising rooms to consumers.

67.    Because of Hilton's deceptive Junk Fee Practices, Hilton advertises a price (such as $595) at which it is does intend to, and is not willing, to sell the room. And because of these deceptive Junk Fee practices, a consumer cannot reasonably compare the total price of a room against the price of other rooms at Hilton and other hotel companies.

**2.    Hilton Also Charges Junk Fees to Residents of the District When They Book Travel Outside the District.**

68.    The same is true for consumers based in the District who seek to book a room outside the District.

69.    For example, if a resident of the District attempts to book a hotel room in the San Diego, California area through Hilton's website, she receives the following options with nightly pricing information without any indication of which options are Junk Fee hotels:



70.     If the consumer from the District selects the Hilton San Diego Gaslamp Quarter with an advertised price of $293 per night, she goes through the same multistep process as above, and despite selecting the advertised price of $293 on three separate occasions, cannot complete the transaction for that price. Instead, she is required to pay a $25.00[31] "Mandatory Charge" Junk Fee, which is paid to and kept by Hilton:

## Total for stay                                                    $359.04
Hide price details

                                                                Price in $USD

Premium View - 1 King
Honors Discount
09 Sep 2023                                                          $293.70
**Total room charge**                                               **$293.70**

Mandatory Charge: $25.00 per room, per night
**Total fees**                                                        **$25.00**

10.50 % per room, per night
2.00 % per room, per night
$0.50 per room, per night
**Total taxes**                                                      **$40.34**

                                                     Total for stay:  $359.04

71.     Once again, Hilton conceals the Junk Fee throughout the booking process.

72.     Hilton also falsely suggests that Hilton is obligated by law or otherwise to charge its Junk Fees by calling them mandatory and claiming that they must be assessed "per room, per night," just as Hilton must assess City-mandated taxes "per room, per night," even though Hilton has decided to charge the fee on its own, and for its own benefit.

73.     Thus, a District-based consumer has no way to purchase a hotel room with Hilton without incurring a Junk Fee of $25.00 and, as a result, has no ability to complete the hotel reservation transaction for the advertised price of $293 per night.

---

[31] On top of this $25.00 Junk Fee, Hilton also assesses approximately $3.13 in San Diego Transient Occupancy and Tourism Marketing District taxes on the fee. The fact that Hilton assesses taxes on a Junk Fee that it is required to apply to "the rent for the occupancy of the structure or any portion of the structure" further demonstrates that Hilton's Junk Fees are part of the price of room, so they should be advertised as part of the price of a room. *See Transient Occupancy Tax (TOT)/Tourism Marketing District (TMD)*, City of San Diego (last updated Mar. 28, 2023), https://www.sandiego.gov/treasurer/taxesfees/tot.

74.     Because of Hilton's deceptive Junk Fee practices, a consumer also cannot reasonably compare the total price of a room against the price of other rooms at Hilton and other hotel companies.[32]

***

75.     For these reasons, Hilton's presentation of its Junk Fees is an unfair and deceptive trade practice.

76.     First, on four separate occasions in the booking process, Hilton advertises a room price that does not include Junk Fees that a consumer must ultimately pay to Hilton in order to book the room.

77.     Second, during the booking process, Hilton continues to advertise an incomplete and inaccurate room price that does not include Junk Fees, as it partitions Junk Fees from the room rate, and does not even conspicuously disclose the Junk Fee.

78.     Third, by calling the Junk Fee "mandatory" Hilton creates the false and deceptive impression that the fee is an amount that Hilton is obligated to charge by law or for other reasons outside of its control, rather than a fee Hilton chooses to charge for its own solitary gain. A consumer would not understand that Hilton calls the fee "mandatory" simply because it refuses to honor the advertised price and will not sell the consumer the room unless the consumer pays it. Hilton further creates this false and deceptive impression by telling consumers that it must assess the fee "per room, per night," just as it must assess mandatory taxes "per room, per night." By using this same language to describe Junk Fees and taxes, and separating them both from the room price, Hilton suggests its decision to charge both amounts is compulsory, which is false. This impression is strengthened because, as seen with the Hilton San Diego Gaslamp Quarter, many states and municipalities charge multiple taxes and fees which appear on a consumer's hotel bill. In fact, the $0.50 "per room, per night" is a California Tourism Assessment Fee, a fee that is

---

[32] Consumers who access the websites for Hilton's Junk Fee hotels that are located outside of the District through Google are similarly misled. *See supra* note 30 (describing how consumers who access the hotel webpage through Google are shown incomplete room prices on the hotel website).

mandated by California law.[33] There is no way for a consumer to know which fees are mandated by the government and which are "mandated" by Hilton.

> **3.    Consumers Cannot Effectively Compare Prices Across Brands because of Hilton's Deceptive Practices.**

79.    Hilton's deceptive Junk Fee advertising stands in stark contrast to the current practices of some of Hilton's competitors.

80.    Take for example, Omni Shoreham Hotel's advertisement to book a room as compared to Hilton's Junk Fee practices. Because of Hilton's practices, a consumer deciding whether to book a room at the Omni Shoreham Hotel or Washington Hilton would be induced to believe that a room at the Washington Hilton is cheaper, though the actual complete price is not.

81.    On August 30, 2023, for example, the Omni Shoreham Hotel displayed a price of $224 per night to book a "Deluxe Room - 1 King Bed" room for September 9-10, 2023:



DELUXE ROOM - 1 KING BED

SLEEPS 3    •    1 KING BED    •    300+ SQ.FT.

Experience sophistication and comfort at this historic Washington landmark.

Room Details

from $224

VIEW RATES

---

[33] *See* Cal. Gov't Code § 13995.65; *see also Calculate Assessment*, Cal. Office of Tourism, https://tourism.ca.gov/s/calculate-assessment?language=en_US (last visited September 19, 2023).

82.     A consumer searching for a hotel room in Washington, D.C. for September 9-10, 2023 may have also stumbled across the Washington Hilton, which on August 30, 2023 advertised a cheaper nightly rate per night of $207:



83.     Based on these two advertisements, a consumer should expect to pay at least $17.00 *less* per night if she selects the Washington Hilton rather than the Omni Shoreham Hotel. However, if the consumer purchases the room at the Washington Hilton instead of the room at the Omni Shoreham Hotel, she will actually pay more. The total price for the Omni Shoreham Hotel stay is $259.84:

| | |
|---|---|
| Arrival Date | Sat, Sep 9th 2023 |
| Nights | 1 night |
| Guests | 1 adult |
| Rooms | 1 room |
| Check-In | After 3:00 PM EDT |
| Check-Out | Before 12:00 PM EDT |
| DELUXE ROOM - 1 KING BED | $259.84 USD |
| Longer Days, Longer Stays - 1 Night (1 Adult) | |
| Daily Rate Sat, Sep 9th | $224.10 USD |
| Taxes | $35.74 USD |
| Subtotal | $259.84 USD |
| Additional Taxes | $0.00 USD |

Cancel by 12PM on 09/02/2023 to avoid $259.84 penalty. A deposit is not required

| | |
|---|---|
| GRAND TOTAL | $259.84 USD |

84.    By contrast, the total price for the Washington Hilton stay for these dates is $263.73:

| Total for stay | $263.73 |
| --- | --- |
| Show price details | |
| Total room charge | $207.45 |
| Total fees | $20.00 |
| Total taxes | $36.28 |

85.    From the onset of the search process, therefore, consumers of hotels that do not currently charge Junk Fees or that include Junk Fees in their advertised room prices are able to compare accurate total price across companies and rooms in order to make an informed choice as to which company and room is right for them.

86.    However, as shown, Hilton's consumers are not so fortunate. Hilton does not intend to sell nor sell rooms at their advertised prices. Instead, Hilton's practice is to advertise false and misleading room prices that exclude Junk Fees, thereby inducing consumers to undertake the search and cognitive effort to pick a hotel room and to psychologically commit to a room based on an inaccurate room rate.

87.    Hilton's Junk Fees practices thus not only harm consumers, but give Hilton an unfair advantage over its competitors who properly advertise the full price of a room.

## THE DISTRICT'S CONSUMER PROTECTION PROCEDURES ACT

88.    The District of Columbia Consumer Protection Procedures Act protects consumers from a wide range of unfair and deceptive business practices. *See* D.C. Code § 28–3904.

89.    Consistent with these protections, CPPA Section 28–3901(c) directs courts to construe the CPPA broadly "to promote its purpose," including ensuring that "a just mechanism exists to remedy all improper trade practices" and promoting "through effective enforcement[] fair business practices throughout the community." D.C. Code §§ 28–3901(c), (b)(1), (2).

90.    Among other things, the CPPA "establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased,

ALM | LAW.COM RADAR

leased, or received in the District of Columbia," D.C. Code § 28–3901(c), and makes it unlawful to "advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered" and "make false or misleading representations of fact concerning . . . the price in comparison to [the] price of [a] competitor['s]," D.C. Code §§ 28–3904(h), (j).

91.    CPPA Section 28–3904 is explicit that a violation occurs regardless of "whether or not any consumer is in fact misled, deceived, or damaged" by the unlawful practice.

92.    Further, the CPPA authorizes public interest organizations, such as Travelers United, to bring claims on behalf of a class of consumers:

> [A] public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action . . . .

D.C. Code §§ 28–3905(k)(1)(D).

93.    Where a violation is found, the CPPA provides for statutory damages of $1,500 *per violation*, among other relief. D.C. Code § 28–3905(k)(2)(A)(i).

94.    Under the CPPA, a nonprofit or public interest organization may also seek an injunction against the use of the unlawful trade practice. D.C. Code § 28–3905(k)(2)(D).

## CLASS ALLEGATIONS

95.    This action is brought and may properly proceed as a class action pursuant to D.C. Rule of Civil Procedure 23 ("Rule 23"), including Sections (b)(1), (b)(2) and (b)(3) of Rule 23.

96.    Travelers United seeks certification of the following nationwide class (the "**National Class**"), consisting of the following individuals:

> All individuals in the United States who booked a room at a Hilton hotel within the District of Columbia for personal use and paid a resort, destination, and/or other

similar fee to Hilton.

97.    Travelers United also seeks certification of the following District of Columbia class (the "**District Class**"), consisting of the following individuals:

> All residents of the District of Columbia who booked a room at a Hilton hotel within the United States for personal use and paid a resort, destination, and/or other similar fee to Hilton.

98.    The National Class and District Class are collectively referred to as the "Classes," and their members are collectively referred to as the "Class members."

99.    Hilton's deceptive Junk Fee practices violated each Class members' individual statutory right to truthful information from Hilton about the actual price of nightly room rates purchased, leased, or received in the District of Columbia.

100.    Hilton's deceptive Junk Fee practices have resulted in actual injury and harm to the Class members in the amount of the Junk Fees which were absent from the advertised price and which they paid as a result of Hilton's drip and/or partitioned Junk Fee practices.

101.    Travelers United explicitly reserves its right to amend, add to, modify, and/or otherwise change the proposed class definitions as discovery in this action progresses.

102.    The following people are excluded from any of the Classes: (1) any Judge or Magistrate presiding over this action, members of their staffs (including judicial clerks), and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Travelers United's counsel and Defendant's counsel, and non-attorney employees of their firms; and (6) the legal representatives, successors, and assigns of any such excluded persons.

103.    **Numerosity.** Travelers United is informed and believes that there are tens of thousands or potentially millions of members of the Classes. The Classes are so large that the

joinder of all of their members is impracticable. The exact number of members of each of the Classes can be determined from information in the possession and control of Hilton.

104.    **Commonality.** Hilton has acted or refused to act on grounds that apply generally to the Classes. Absent certification of the Classes, the relief sought herein creates the possibility of inconsistent judgments and/or obligations imposed on Hilton. Numerous common issues of fact and law exist, including, without limitation:

a.    Whether Hilton's drip and/or partitioned Junk Fee practices are a trade practice under the CPPA;

b.    Whether hotel rooms are consumer goods or services under the CPPA;

c.    Whether Hilton's offer, lease, and/or sale of hotel rooms renders it a merchant under the CPPA;

d.    Whether Hilton's advertising, or causing of advertising by third parties, of prices and room rates for lodging in their hotels that do not include Junk Fees constitutes an advertisement or offer without the intent to sell the lodging as advertised, which is an unlawful trade practice that violates the CPPA (D.C. Code § 28–3904(h));

e.    Whether Hilton's drip and/or partitioned Junk Fee practices constitute a "misrepresent[ation] as to a material fact which has a tendency to mislead" (D.C. Code § 28–3904(e));

f.    Whether Hilton's drip and/or partitioned Junk Fee practices "fail to state a material fact" that "tends to mislead" (D.C. Code § 28–3904(f));

g.    Whether Hilton's drip and/or partitioned Junk Fee practices "use innuendo or ambiguity as to a material fact, which has a tendency to mislead" (D.C. Code § 28–3904 (f-1));

h.    Whether Hilton's drip and/or partitioned Junk Fee practices "make false or misleading representations of fact concerning . . . the price in comparison to price of competitors or one's own price at a past or future time," (D.C. Code § 28–3904 (j)); and

      i.     Whether Hilton representing Junk Fees as a "mandatory charge" that it assesses "per room, per night" is an unlawful trade practice under the CPPA.

105.   **Predominance.** These common issues predominate over individualized inquiries in this action because Hilton's liability can be established as to all members of the Classes as discussed herein.

106.   **Typicality.** Travelers United brings this action on behalf of Classes of consumers for whom it advocates in connection with its mission to improve and enhance travel, including through initiatives to oppose hidden hotel fees. Hence, its mission is to promote the objectives of the Classes of consumers it seeks to represent. Travelers United's claims are also typical, if not identical, to the claims that could be asserted by all members of the Classes. Their claims all arise from Hilton's deceptive Junk Fee practices applicable to all such Class members and are based on the same legal theory as to how and why those practices violate the CPPA. *See Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 40 (D.D.C. 2017) ("typicality focuses on the similarities between the class representative's claims and those of the class").

107.   **Adequacy.** The CPPA provides that Travelers United, as a public interest organization, can bring this action on behalf of the interests of a class of consumers. *See* D.C. Code § 28–3905(k)(1)(D)(i). In doing so, Travelers United will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex litigation and class actions. Travelers United's claims are representative of the claims of the members of the Classes, as its claims arise from the allegation that each member of the Classes lost money by paying Junk Fees to Hilton because of Hilton's unlawful practices. Travelers United also has no interests antagonistic to those of the Classes, and Hilton has no defenses unique to Travelers United. Travelers United and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Travelers United nor their counsel have any interest adverse to the Classes.

108.   **Superiority.** There are substantial benefits to proceeding as a class action that render proceeding as a class action superior to any alternatives, including that it will provide a

realistic means for members of the Classes to recover damages; the damages suffered by members of the Classes may be relatively small; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many members of the Classes may be unaware that they have legal recourse for the conduct alleged herein; and because issues common to members of the Classes can be effectively managed in a single proceeding. Travelers United knows of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

109.    Travelers United reserves the right to revise each of the foregoing allegations based on facts learned through additional investigation and in discovery.

<u>**COUNT l**</u>
**Violation of the Consumer Protection Procedures Act, D.C. Code §§ 28-3901 *et seq.***
**On Behalf of the Classes**

110.    The allegations of Paragraphs 1 through 109 are re-alleged as if fully set forth herein.

111.    The D.C. Consumer Protection Procedures Act is a remedial statute that is to be broadly construed. It establishes "an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia." D.C. Code § 28–3901(c). CPPA Section 28–3904 is explicit that a violation occurs regardless of "whether or not any consumer is in fact misled, deceived, or damaged" by the unlawful practice.

112.    Travelers United has standing to bring this Count on behalf of the Classes under D.C. Code § 28–3905(k)(l)(D)(i), which provides in relevant part that "a public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice."

113.    Travelers United is a public interest organization that has done significant advocacy work against Junk Fees across the travel industry, both locally in the District and at the federal level.

114.    The CPPA prohibits unlawful trade practices in connection with the offer, sale, advertisement, and supply of consumer goods and services. D.C. Code § 28–3904.

115.    The hotel rooms Hilton offers to consumers are leased or sold for personal, household, or family purposes and, therefore, are consumer goods or services.

116.    Hilton, in the ordinary course of business, offers to lease, sell, or supply consumer goods and services and, therefore, is a merchant. D.C. Code § 28–3901(a)(3).

117.    Hilton's advertising of prices and room rates for lodging in their hotels that do not include nightly Junk Fees that were then charged as a prerequisite to booking a hotel room constitutes an advertisement or offer without the intent to sell the lodging as advertised, which is an unlawful trade practice that violates the CPPA, D.C. Code § 28–3904(h).

118.    Because cost is a material fact to consumers deciding whether to book a hotel room, and because drip and partitioned pricing misrepresent the price of a hotel room and total cost to the consumer, and because representation of Junk Fees as a mandatory charge that Hilton was obligated to pay by law or otherwise misrepresents the true nature of the Junk Fee, through this conduct Hilton engaged in unfair and/or deceptive trade practices by "misrepresent[ing] . . . a material fact which has a tendency to mislead," D.C. Code § 28–3904(e), "fail[ing] to state a material fact" and "such failure tends to mislead," D.C. Code § 28–3904(f), "us[ing] innuendo or ambiguity as to a material fact, which has a tendency to mislead," D.C. Code § 28–3904(f-1), and/or "mak[ing] false or misleading representations of fact concerning . . . the price in comparison to price of competitors or one's own price at a past or future time," D.C. Code § 28–3904(j).

119.    Hilton's deceptive Junk Fee practices violated each Class member's individual statutory right to truthful information from Hilton about the actual nightly rate and true nature of the Junk Fees for hotels rooms purchased, leased, or received in the District of Columbia.

ALM | LAW.COM RADAR

120.    Class members suffered actual injuries as a result of Hilton's unfair and deceptive practices in the amount of the Junk Fees that consumers were required to pay in order to book a hotel room which were not included in the advertised price but were paid.

121.    Each night that Hilton charged Junk Fees constitutes a violation of the CPPA.

122.    Given these practices, Travelers United and the Class members are also entitled to injunctive relief. D.C. Code § 28–3905(k)(2)(D).

123.    WHEREFORE, Travelers United respectfully requests this Court enter judgment in its favor and the favor of the Classes and against Hilton, as follows:

a.    Permanently enjoin Hilton, pursuant to D.C. Code § 28–3905(k)(2)(D), from advertising rates for hotel rooms that exclude resort, destination, and/or other similar fees that consumers are required to pay to book a room;

b.    Permanently enjoin Hilton, pursuant to D.C. Code § 28–3905(k)(2)(D), from partitioning advertised hotel room prices from resort, destination, and/or other similar fees that consumers are required to pay to book a room, including discontinuing the practice of calling these fees at checkout a "mandatory charge" that Hilton must assess "per room, per night";

c.    Award the Class members actual damages;

d.    Award the Class members treble damages of the actual damages as provided in the CPPA, or statutory damages of $1,500.00 per violation, whichever is greater;

e.    Award Travelers United and the Class members punitive damages as determined by the trier of fact as Hilton's actions were replete with malice and were accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, and willful disregard of the Class members' rights as described above;

f.    Award Travelers United and the Class members reasonable attorneys' fees and costs as provided in the CPPA;

g.      Grant any additional relief as may be necessary to restore to the Class members money which may have been acquired by means of Hilton's unlawful trade practices pursuant to D.C. Code 28–3905(k)(2)(E); and

h.      Grant Travelers United and the Class members other and further relief as the Court finds necessary and proper.

### JURY DEMAND

124.    Travelers United demands a trial by jury.


Date: September 20, 2023                    /s/ Hassan Zavareei

Hassan Zavareei (DC Bar No. 456161)
Peter Silva (DC Bar No. 1010483)
Leora Friedman (DC Bar No. 1735514)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*hzavareei@tzlegal.com*
*psilva@tzlegal.com*
*lfriedman@tzlegal.com*

Wesley M. Griffith (*pro hac vice to be filed*)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
*wgriffith@tzlegal.com*

*Counsel for Travelers United and the Putative Classes*